NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

Nos. 18-1498 & 18-1499

—————————

UNITED STATES OF AMERICA

Appellee/Cross-Appellant

v.

MARK A. CIAVARELLA, JR.,

Appellant/Cross-Appellee

—————————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 3-09-cr-00272-002)
District Judge: Honorable Christopher C. Conner

—————————

Submitted Under Third Circuit L.A.R. 34.1(a)
March 7, 2019

Before: AMBRO, RESTREPO, and GREENBERG, Circuit Judges

(Opinion filed March 29, 2019)

—————————

OPINION[*]

—————————

AMBRO, Circuit Judge

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

This is a *habeas* appeal in the infamous "kids-for-cash" scandal. A former Pennsylvania judge argues that his trial counsel was ineffective by failing to raise a statute-of-limitations defense, and the appeal centers on the prejudice wrought by the deficient lawyering: Would a proper timeliness defense have resulted in the judge's acquittal on charges of racketeering, money-laundering conspiracy, and mail fraud? Because we determine the answer is "yes" as to racketeering and money-laundering and "no" as to mail fraud, we affirm the District Court in full.

## Background

Mark Ciavarella, a judge of the Pennsylvania Court of Common Pleas, accepted nearly $3 million in kickbacks from the owner and builder of two private prisons that housed juvenile inmates. In exchange, he sentenced children to long stays in juvenile detention for minor offenses. He was convicted of racketeering, money-laundering, mail fraud, tax fraud, and conspiracy to defraud the United States.

We focus on the failure by Ciavarella's trial counsel to raise a statute-of-limitations defense. Both parties agree that his counsel was ineffective. But was that prejudicial? That, in turn, depends on whether any of Ciavarella's convictions punished conduct that should have been off-limits by the statute of limitations — in this case, crimes committed before September 2004.

Based on the jury's verdict, the following facts were proven beyond a reasonable doubt. Ciavarella received kickbacks in the form of three wire transfers in 2003. To conceal these payments, he lied about his income in annual filings to the Administrative Office of Pennsylvania Courts in April 2004 and each April thereafter through 2007. In

addition, the jury convicted Ciavarella of racketeering and money-laundering conspiracies that, as charged, straddled the limitations period by running from 2001 to 2009.

On direct appeal, we affirmed all but one conviction. Unlike their faulty approach to most other counts, Ciavarella's trial lawyers had raised a timeliness challenge to the conviction for the April 2004 financial filing. Because that filing occurred before the limitations window of September 2004, we vacated the conviction. *See United States v. Ciavarella*, 716 F.3d 705, 734 (3d Cir. 2013).

Seeking collateral relief, Ciavarella brought a motion to vacate other convictions under 28 U.S.C. § 2255. The District Court did so for racketeering and money-laundering on the ground that Ciavarella's counsel was ineffective, denied the motion to vacate as to the counts for mail fraud, and denied Ciavarella's claim that the jury instructions were faulty in light of the Supreme Court's subsequent decision in *United States v. McDonnell*, 136 S. Ct. 2355 (2016). Both Ciavarella and the Government have appealed.

## Analysis

We deal with three discrete issues. Each devolves to whether an error by trial counsel was prejudicial. To meet his burden as to prejudice, Ciavarella must show a "reasonable probability" that, absent his counsel's error, the outcome of his trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

## A. *Racketeering and Money-Laundering Conspiracies*

The jury convicted Ciavarella of receiving kickbacks in 2003 (outside the limitations period) but acquitted him of charges relating to kickbacks from 2004 and later (within the limitations period). As noted, it also convicted him of racketeering and money-laundering conspiracies that were alleged to have run from 2001 to 2009.

Targeting those conspiracy convictions, Ciavarella argues that competent trial counsel would have excluded the 2003 kickbacks on limitations grounds. As a result, he maintains that the jury would have had nothing on which to base its convictions for racketeering and money-laundering. In response, the Government points out that Ciavarella was also convicted of submitting fraudulent financial filings in 2005, 2006, and 2007 — in other words, well into the limitations period. The Government maintains that the filings furthered the conspiracies by concealing the kickbacks.

Thus the *habeas* petition presents whether the jury based its conspiracy convictions on the 2003 kickbacks alone (in which case the conspiracy charges should have been time-barred) or on the subsequent financial filings (if so, the charges were timely). Because it concluded there was a "reasonable probability" of the former scenario, the District Court vacated Ciavarella's conspiracy convictions.

We agree and thus affirm. We cannot say for certain whether the jury believed that the racketeering and money-laundering conspiracies ended before September 2004. But such a belief seems "reasonably probable" in light of the jury's acquittal on all kickbacks after 2003.

### B. *Mail Fraud*

Ciavarella was convicted of mail fraud for filing financial statements in 2005, 2006, and 2007 (within the limitations period) that concealed his kickback income earned in 2003 (before the limitations period). He argues that an adequate statute-of-limitations defense by his trial counsel would have resulted in an acquittal on the charges of mail fraud.

Here we disagree. Although the underlying conduct that supported the fraud occurred before 2004, the financial statements were not submitted — and the crime of mail fraud was therefore not completed — until after 2004. Indeed, our Court on direct appeal already explained that the 2003 kickbacks were enough to support convictions for mail fraud in 2005–07. *See Ciavarella*, 716 F.3d at 730. As a result, we affirm the District Court's denial of *habeas* relief on these convictions.

### C. *McDonnell Instruction*

After Ciavarella's trial, the Supreme Court clarified the meaning of "official act" for purposes of bribery. *See McDonnell*, 136 S. Ct. at 2361. In light of this decision, Ciavarella argues that he deserves a new trial with different jury instructions on the meaning of "official act."

For two reasons, we disagree. First, Ciavarella's counsel failed to preserve this claim by challenging the jury instructions at trial, and Ciavarella cannot provide any reason to excuse this procedural default. In particular, it is no excuse that he was convicted before *McDonnell* was decided. Although "subsequent legal developments have made counsel's task easier," a *McDonnell*-style challenge was "available" at the

time of Ciavarella's conviction.  *See Smith v. Murray*, 477 U.S. 527, 537 (1986) (noting that "various forms of the claim [the petitioner] now advances had been percolating in the lower courts for years at the time of his original appeal").

Second, Ciavarella's bribery-related actions still satisfy even a post-*McDonnell* understanding of "official act."  If sentencing hundreds of juvenile offenders to excessive terms of incarceration is not an "official act," then nothing is.  *See* 18 U.S.C. § 201(a)(3) (defining "official act" in part as "any decision or action on any question, matter, cause, suit, proceeding or controversy . . . which may by law be brought before any public official, in such official's official capacity"); *see also McDonnell*, 136 S. Ct. at 2371–72.

In this context, we affirm the District Court in full.